794 F.2d 330
 WESTBOROUGH MALL, INC., a corporation, George Staples, Jr.,
individually, and as sole general partner of
Westborough Mall Associates, a Missouri
Limited Partnership, Appellees,
v.
CITY OF CAPE GIRARDEAU, MISSOURI, a municipal corporation,
Appellant.
Paul W. Stehr, Oliver A. Hope, Robert K. Herbst, Howard C.
Tooke, Samuel L. Gill, Gail L. Woodfin, W.G.
Lawley, Drury Industries, Inc., a
corporation and May Centers of
Cape, Inc., a corporation.
WESTBOROUGH MALL, INC., a corporation, George Staples, Jr.,
and Westborough Mall Associates, a Missouri
Limited Partnership, by and through
George Staples, Jr., its sole
general partner, Appellants,
v.
CITY OF CAPE GIRARDEAU, MISSOURI, a municipal corporation,
Charles L. Drury, Drury Industries, Inc., a corporation, May
Department Stores Co., a corporation, West Park Associates,
a Missouri Limited Partnership, May Centers of Cape, Inc., a
corporation and May Centers, Inc., a corporation, Appellees.
 Nos. 84-1356, 84-1304.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 11, 1985.
Decided June 17, 1986.
 
 Robert Freilich, Kansas City, Mo., for Westborough Mall, Inc.
 Stephen E. Strom, Cape Girardeau, Mo., for City of Cape Girardeau.
 Tom Walsh, St. Louis, Mo., for May Dept. Stores Co. and Drury Industries.
 Before LAY, Chief Judge, McMILLIAN, Circuit Judge, and WOODS,* District Judge.
 McMILLIAN, Circuit Judge.
 
 
 1
 Westborough Mall, Inc., a corporation, George Staples, Jr., and Westborough Mall Associates, a Missouri limited partnership, (appellants) appeal from a final judgment entered in the District Court for the Eastern District of Missouri upon a jury verdict in a 42 U.S.C. Sec. 1983 action in favor of the City of Cape Girardeau, Missouri (the City), members of the city council in their individual capacities, Drury Industries, Inc., May Department Stores Co., West Park Associates, May Centers of Cape, Inc., and May Centers, Inc. (appellees). Appellants alleged a denial of procedural due process, a conspiracy between the City and the private appellees to deprive them of their constitutional rights and antitrust violations. For reversal appellants argue that the district court erred (1) in instructing the jury, (2) in holding that the actions of the city officials did not represent official policy, and (3) in denying appellants' motion for directed verdict and for judgment notwithstanding the verdict on the procedural due process claim against the City. For the reasons discussed below, we reverse and remand for proceedings consistent with this opinion.
 
 
 2
 This case is before this court on appeal for the second time. In the first appeal a grant of summary judgment in favor of appellees was reversed and the case was remanded for trial. Westborough Mall, Inc. v. City of Cape Girardeau, 693 F.2d 733 (8th Cir.1982) (Westborough I), cert. denied, 461 U.S. 945, 103 S.Ct. 2122, 77 L.Ed.2d 1303 (1983). The following statement of facts is taken in part from the opinion in Westborough I.
 
 
 3
 In the early 1970s both appellant George Staples, Jr., and appellee Charles Drury, president of Drury Industries, Inc., separately expressed interest in developing a shopping mall in the City of Cape Girardeau, Missouri. In 1973 Staples entered into a long-term lease on approximately 67 acres of land for the purpose of constructing a regional shopping facility referred to as Westborough Mall. On June 5, 1974, the Cape Girardeau City Council enacted Ordinance No. 904 which rezoned the Westborough Mall property to C-4, a zoning classification specifically designated for regional shopping center development. This ordinance also exempted the property from the provisions of another ordinance (Ch. 30, Sec. 31(e)), which provided that if a shopping center was not constructed on property rezoned C-4 within three years, the zoning would automatically revert to the classification in effect prior to the C-4 zoning. This latter ordinance is referred to as the automatic reverter provision.
 
 
 4
 Staples unsuccessfully attempted to secure "anchor" tenants for the proposed Westborough Mall shopping center. Regional shopping centers depend on "anchor" tenants which are large department stores; smaller stores generally will only agree to lease space in the shopping center after the "anchor" stores have agreed to lease.
 
 
 5
 In September 1976 Staples formed Westborough Mall Associates, a limited partnership, to develop the Westborough Mall site. The partnership raised $800,000 and received a building permit from the City in June 1977. Also in June 1977 the city by ordinance corrected certain legal descriptions of the Westborough property and confirmed that the property was zoned C-4. Site work began in 1977: a survey was conducted, water drainage systems were installed, and grading and other surface improvements were made. By December 1978 more than one million dollars had been spent on the Westborough Mall site. At this time, Westborough Mall Associates had received letters of interest from many smaller stores although no anchor tenants had made a commitment. Steps were taken to secure additional financing and Westborough Mall Associates was investigating a new anchor store concept--an "elite" store composed of a number of small tenants.
 
 
 6
 Appellee Drury's plans for a shopping center in Cape Girardeau were also proceeding during this period. Drury was interested in developing a shopping center called the West Park Mall which was to be located on land owned by Drury that was less than one mile from the Westborough site. Drury Industries, Inc., and May Centers of Cape, Inc., formed a partnership to develop this center. May Centers, Inc., is an experienced shopping mall developer and Famous Barr Co., a large department store chain, is a subsidiary of the May Co.
 
 
 7
 Drury's contribution to the venture included dealing with city officials. In 1974 Drury received a letter from the city attorney which indicated that Drury had the option of performing initial work with C-2 zoning. In 1977 Drury informed the May officials that he had already talked with W.G. Lawley, the city manager, and planned to talk with the mayor privately about obtaining C-2 zoning on all the West Park Mall property. After a September 1978 meeting with Lawley and the city building commissioner and engineer, Drury told May officials that he had "tacit city approval for C-4 zoning for the shopping center site in exchange for the Silver Spring Road extension right of way that he owned." On April 4, 1979, the city council approved Drury's C-2 zoning application.
 
 
 8
 On April 5, 1979, Staples filed a lawsuit[1] in state court challenging the rezoning of the West Park Mall site. On the next day, the city manager, announced to the media that appellants' C-4 zoning had reverted. The local television news and Cape Girardeau newspapers carried the story. On April 11, 1979, after conferring with the city attorney, the city manager[2] gave written instructions to the city engineer to change the City's master zoning map[3] to show a reversion of the Westborough site from C-4 to the original zoning. The city engineer followed these directions. The engineer was also directed not to issue or renew building permits for mall construction to appellants.
 
 
 9
 At a meeting of the city council on April 17, 1979, the city manager submitted a study session report to the council which advised the council that appellants' C-4 zoning had reverted by operation of the automatic reverter provision. The report stated in part: "[U]ntil instructed otherwise by the City Council or Court of proper jurisdiction, the City Manager intends to apply provisions of this section [automatic reverter section] to the Westborough Mall property." The city manager further stated that the automatic reverter provision applied because appellants had not constructed a shopping mall on the Westborough Mall site within three years of the granting of C-4 zoning in 1974. Although the city council discussed the issue, no action was taken at this meeting.
 
 
 10
 On May 23, 1979, appellants' financier wrote to the city manager concerning the status of the Westborough Mall zoning. The city manager replied that in his opinion the C-4 zoning had reverted and he enclosed copies of the ordinance and the official zoning map which reflected the reversion.
 
 
 11
 On August 1, 1979, the West Park Mall developers obtained a rezoning of their property from C-2 to C-4. Work continued and the West Park Mall opened in 1981.
 
 
 12
 In September 1980 the city council adopted Ordinance No. 1599, "reaffirming" that the Westborough Mall site was zoned C-4. This ordinance confirmed that the Westborough Mall's C-4 grant had been specifically exempted from application of the automatic reverter provision.
 
 
 13
 In 1980 appellees removed appellants' pending state action to federal district court. On September 5, 1980, the district court granted appellants' motion to file another amended complaint. The complaint as amended contained seven counts. Count I alleged a 42 U.S.C. Sec. 1983 procedural due process claim against the City and the members of the city council and the city manager individually; Count II alleged a conspiracy to deprive appellants of their constitutional rights; count III alleged a claim for antitrust violations.[4]
 
 
 14
 The district court subsequently entered summary judgment on all counts in favor of all defendants and denied appellants' request for summary judgment. In November of 1982 this court in Westborough I reversed the district court and held that appellants had stated sufficient facts to entitle them to a trial on the first six counts. 693 F.2d at 748. However, this court sustained the summary judgment in favor of appellees on Count VII seeking a declaratory judgment that the West Park Mall rezonings were invalid. Id. This court also held that appellants had no standing to challenge the West Park Mall rezonings. Id. This court further dismissed all counts against the members of the city council and the city manager in their individual capacities. Id.
 
 
 15
 A ten-day trial was held in October 1983 on the six counts. Appellants voluntarily dismissed three counts (Counts IV, V, and VI) and the jury returned a verdict in favor of appellees on the other three counts (Counts I, II, and III). Appellants' motions for a new trial and for judgment notwithstanding the verdict were denied. This appeal followed. Appellees cross appealed from the denial of attorneys' fees. Appellants on appeal have abandoned their antitrust claim and appellees have abandoned their claim for attorneys' fees.
 
 I. Jury Instructions
 
 16
 Appellants initially argue that the district court's instructions to the jury relating to Count I were prejudicially erroneous, confusing and misleading, and failed to properly charge the jury on key elements of the case. Appellants also assert that the district court's instructions disregarded the law of the case.
 
 
 17
 In reviewing the trial court's instructions to the jury, we must consider the charge as a whole. E.g., Total Petroleum, Inc. v. Davis, 788 F.2d 476, 484 (8th Cir.1986). There is no harmful error if the charge in general correctly instructs the jury, even if one portion is technically incorrect. Houston v. Herring, 562 F.2d 347, 348 (5th Cir.1977) (per curiam). However, "erroneous instructions are not cured by correct instructions in other portions of the charge when 'the charge leaves us with substantial and ineradicable doubt whether the jury has been properly guided in its deliberation.' " Id. (citations omitted). " 'The test is not whether the charge was faultless in every particular but whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues.' " Id. at 359 (citation omitted). With these principles in mind, we consider each of appellants' challenges to the jury instructions.
 
 Instruction No. 13--Automatic Reverter
 
 18
 Instruction No. 13 on the automatic reverter stated in part: "You are instructed that plaintiffs admit that there has never been any legal reverter of the Westborough Mall tract." This statement was based on appellants' amended complaint, paragraph 14b, which stated: "[T]here, in fact, had been no reverter and ... said purported reverter, publicized by defendants, was false and illegal, in that Ordinance 904 specifically excluded plaintiffs' land from the reverter provisions...."
 
 
 19
 Appellants argue that instruction No. 13 incorporated appellees' basic argument and was tantamount to instructing the jury that the City was not liable. Appellants contend that the district court should have given proposed instruction No. 7,[5] which stated that the City may be liable for the actions of the city manager even though his actions were illegal. Appellees argue that the district court did not err in giving instruction No. 13 because it was extracted from appellants' amended complaint.
 
 
 20
 We conclude after a careful review of the instructions as a whole that instruction No. 13 is prejudicially erroneous because it is not a complete and accurate statement of appellants' position concerning the automatic reverter. Appellants have consistently asserted that Ordinance No. 904 excluded the Westborough Mall site zoning from the application of the automatic reverter provision and the City later affirmed this. What appellants therefore complained about is not a reversion as the result of the automatic reverter provision, but rather the actions of the City which allegedly had the same effect as the automatic reverter provision. Instruction No. 13 is a serious distortion of appellants' theory concerning the actions of the City. The misleading information contained in instruction No. 13 is not corrected or clarified at any other place in the district court's instructions. See, e.g., Hrzenak v. White-Westinghouse Appliance Co., 682 F.2d 714, 719 (8th Cir.1982) (single erroneous instruction does not require reversal if error was cured by another instruction or by consideration of the entire charge).
 
 
 21
 In addition, we agree with appellants that this instruction is contrary to the law of the case. In Westborough I, this court considered appellees' argument that no reverter had occurred because the Westborough Mall site had been excluded from the operation of the automatic reverter. The court concluded that "from April 1979, to September 1980, [appellants] were effectively deprived of their C-4 classification." 693 F.2d at 741.
 
 
 22
 The court recognized then, as we do now, that the deprivation of a constitutional right does not depend on form. We must look at the substance of the actions taken relative to a constitutionally protected right. The essence of a right may be destroyed although the plaintiff's right is still recognized in an ordinance or in a legal title. As the Eleventh Circuit observed in Reed v. Village of Shorewood, 704 F.2d 943 (11th Cir.1983), "deprived" in the due process sense cannot just mean destroy. "If the state prevents [one] from entering [his or her] house it deprives [him or her] of a property right even if the fee simple remains securely [his or hers]. A property right is not bare title, but the right to exclusive use and enjoyment." Id. at 949. So if it is true, as alleged by appellants, that appellees' actions destroyed the value of appellants' C-4 zoning right and forced appellants ultimately to give up construction of a shopping center, appellants were deprived of their property right in the C-4 zoning, even though the C-4 zoning classification was never actually reverted or revoked.
 
 
 23
 Instruction No. 21--Availability of Post-deprivation Remedies
 
 
 24
 Appellants next argue that instruction No. 21, which addresses post-deprivation remedies, was contrary to the law of the case and the law in this circuit. The district court instructed the jury that the availability of post-deprivation state remedies was a defense to a Sec. 1983 action. The district court further instructed the jury that they must consider whether the various alternatives outlined in the instruction were adequate to correct the reverter.[6]
 
 
 25
 Appellees argue that the district court correctly instructed the jury that appellants had waived their complaints because they had not pursued available administrative or state judicial remedies to correct the mistake of the city manager. Appellees, relying on Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), argue that no constitutional deprivation occurred because of the availability of these state remedies.
 
 
 26
 This court in Westborough I considered appellees' argument that appellants, by their failure to bring the error to the city manager's attention, waived their right to challenge the actions of the city manager. This court held that the waiver argument was "clearly without merit." 693 F.2d at 740 n. 4. Plaintiffs in Sec. 1983 actions are not required to exhaust other remedies before resorting to suit in federal court. Patsy v. Board of Regents, 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982).
 
 
 27
 In addition appellees' and the district court's reliance on Parratt v. Taylor to bar appellants' claim is misplaced. The availability of post-deprivation remedies is not a defense to the denial of procedural due process where predeprivation process is practicable. Parratt v. Taylor, 451 U.S. at 543, 101 S.Ct. at 1916; Littlefield v. City of Afton, 785 F.2d 596, 599 (8th Cir.1986). There are no reasons offered by the City nor can we perceive of any in this fact situation which would justify a denial of a predeprivation hearing.
 
 
 28
 We conclude that this erroneous instruction requires reversal because it permitted the jury to improperly find that appellants suffered no constitutional violation because of the availability of state post-deprivation remedies. Indisputably, this instruction was critical to appellants' claim and resulted in prejudice to appellants.
 
 
 29
 Failure to Define "Official Policy"
 
 
 30
 Appellants next argue that the district court erred in refusing to define "official policy" and in refusing to give appellants' proposed instructions Nos. 7-10. Appellants argue that "official policy" is a legal term which has a specific meaning within the context of Sec. 1983 litigation and is neither universally understood by lay persons nor appreciated in all its legal ramifications.
 
 
 31
 Appellees argue that the district court did not err in failing to define "official policy" because the term is readily understood by a jury. Appellees further assert that appellants' proposed jury instructions offered no definition of official policy. Rather appellants' instructions list the various actions which appellants contended constituted evidence that the city manager's conduct was official policy. Appellees lastly argue that appellants' proposed instructions were properly refused because they misstated the law by requiring the jury to find official policy based on certain actions rather than permitting the jury to so find.
 
 
 32
 The district court, in instruction No. 6, referred to official policy but did not define "official policy." The court in this instruction identified five elements which the jury had to find in order to return a verdict for appellants. Two of these elements are relevant to this discussion. The district court stated that the jury must believe
 
 
 33
 that a public official or employee of the Defendant City acted as follows: the City Manager directed that the official zoning map of the City be changed to reflect a reversion or change of [appellants'] zoning from a zoning district which allowed construction of shopping centers (District C-4) and "such action or conduct may fairly be said to represent official policy" of the ... City of Cape Girardeau.
 
 
 34
 (emphasis added).
 
 
 35
 The parties have not directed us to cases which have considered whether official policy must be defined nor have we found any cases which have discussed this particular issue. However, where terms are not readily understood by the jury or where the possibility of confusion concerning a term exists, the court should define or explain such a term. See Federal Enterprises, Inc. v. Evans, 786 F.2d 817, 820 (8th Cir.1986) (instruction deficient because "key terms, requiring independent factual finding," were not defined); Board of Water Works Trustees v. Alvord, Burdick & Howson & Dorr-Oliver, Inc., 706 F.2d 820, 824 (8th Cir.1983). We do not agree with appellees that official policy in Sec. 1983 cases is readily understood by a jury without instructions from the court.
 
 
 36
 "Official policy" had been defined or discussed in many cases prior to the trial of this case. E.g., Williams v. City of Valdosta, 689 F.2d 964, 969 (11th Cir.1982); Turpin v. Mailet, 619 F.2d 196, 201-202 (2d Cir.1980). The court in Westborough I also offered guidance to the parties and to the district court on what constituted official policy.[7]
 
 
 37
 The Supreme Court, in a case decided after our decision in Westborough I, has once again defined public policy, which may be the basis of municipal liability. Pembaur v. City of Cincinnati, --- U.S. ----, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (Pembaur ). The Court in Pembaur considered whether a single action by an official can result in county or municipal liability. The Court held that "municipal liability under Sec. 1983 attaches where--and only where--a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." At ----, 106 S.Ct. at 1300. The Court further stated that municipal liability may be imposed for a single decision by a municipal policy maker if the single act (1) is a decision of the legislative body, or (2) is executed in compliance with formal rules or understandings that are intended to, and do, establish fixed plans of action to be followed under similar circumstances, consistently and over time, or (3) is directed by those who establish governmental policy. Id. at ---- - ----, 106 S.Ct. at 1298. The Court recognized that municipalities often spread policy-making authority among various officers and official bodies; and, consequently, different officials may have authority to establish binding county policy respecting particular matters and to adjust that policy for the county in changing circumstances. Id. at ----, 106 S.Ct. at 1300.
 
 
 38
 On remand, the district court should incorporate a definition of "official policy" in its jury instructions.
 
 Instruction No. 30
 
 39
 Next, appellants argue that instruction No. 30 was erroneous because it required the jury to find that appellants had been injured in their business or property before the jury could return a verdict in favor of appellants on the Sec. 1983 procedural due process claim. Appellants argue that injury to business or property is not a prerequisite to liability under Sec. 1983 and that the instruction misled the jury into believing that the deprivation of constitutional rights is not in itself injury without more.
 
 
 40
 Appellees argue that this issue was not preserved for review because appellants failed to object to instruction No. 30. Further, appellees argue that appellants waived any error by putting the same requirement of damage in their own verdict instruction.
 
 
 41
 We find no support in the record for appellees' contentions. Although appellants did not object specifically to instruction No. 30 by number, the first objection made by appellants to the proposed charge was that "the proposed charge ... will mislead the jury into believing that a deprivation of constitutional rights is not in itself damage, and requires the jury to believe that there needs to be an extra showing of damage over and above that initial deprivation." Moreover, appellants did not, as appellees state, use language in their proposed instructions which corresponds at all to the instructions given by the district court. The only similarity is that both instructions require the jury to find that the actions of appellees have caused damage to appellants.
 
 
 42
 We hold that instruction No. 30 is prejudicially erroneous because it improperly permitted the jury to find against appellants if the jury found that appellants did not sustain damage to business or property. A plaintiff whose constitutional rights have been violated is entitled to a finding of liability and nominal damages even if no compensatory damages are shown. Carey v. Piphus, 435 U.S. 247, 266-67, 98 S.Ct. 1042, 1053-54, 55 L.Ed.2d 252 (1978).
 
 Instructions as a Whole
 
 43
 Appellants next argue that the instructions taken as a whole were prejudicially erroneous. First, appellants argue that the district court submitted multiple claims to the jury but did not adequately distinguish between the claims and the particular instructions related to each claim. We do not decide this issue because appellants made no objection at trial and cannot now raise this issue on appeal. Fed.R.Civ.P. 51; Smith v. Honeywell, 735 F.2d 1067, 1075 (8th Cir.1984).
 
 
 44
 Appellants' next complaint is that instruction No. 1 unduly emphasized appellants' burden of proof. Appellants object to the length of the instruction but do not otherwise indicate in what way the instruction was erroneous. This argument is without merit. Instruction No. 1 consists of four short paragraphs and is an accurate statement of appellants' burden of proof.
 
 
 45
 Appellants also challenge the district court's reference in the instructions to "purported reverter." We find no error in this usage because appellants also used the term "purported reverter" to indicate that the actions taken by the City had the effect of a reverter although the automatic reverter provision did not apply to them.
 
 
 46
 Appellants next complain that the district court in instruction No. 14 erred in referring to "defendants' zoning rights" when the reference should have been to "plaintiffs' zoning rights." The sentence as it was read to the jury stated: "Was there a conspiracy between the City of Cape Girardeau and the West Park defendants to cause a reverter of defendants' C-4 zoning rights?" (emphasis added) Instruction No. 14 as written correctly refers to "plaintiffs' zoning rights," but the district court inadvertently misread the instruction to the jury. Because there was no issue in this case concerning "defendants' zoning rights," we do not believe the jury was misled by the misreading of the instruction.
 
 
 47
 Appellants next complain that the district court improperly omitted a portion of their proposed instruction No. 6. The proposed instruction would have required the jury to find that the City had engaged in three actions whereas the instruction given by the court required the jury to find only one action by the City in order to return a verdict for appellants. Consequently, the deletion was not prejudicial to appellants because the district court eliminated additional requirements for a verdict in appellants' favor.
 
 II. Directed Verdict and JNOV
 
 48
 Lastly, appellants argue that the district court erred in denying their motion for directed verdict and for judgment notwithstanding the verdict against the City under Count I. Appellants argue that the uncontradicted evidence showed that the City deprived appellants of their C-4 zoning rights without notice or hearing. Appellants urge this court to remand their Sec. 1983 claims against the City for trial on the issue of damages alone.
 
 
 49
 Appellees argue that one of appellants' points of error on appeal in Westborough I was the denial of their motion for partial summary judgment. Westborough I did not explicitly consider this point. We agree with appellees, however, that appellants' motion for partial summary judgment was implicitly denied by the panel in Westborough I.
 
 
 50
 The standard for directed verdict and JNOV is the same. A verdict should be directed only when the evidence is such that "without weighing the credibility of the witnesses, there can be but one reasonable conclusion as to the verdict." Savage v. Christian Hospital Northwest, 543 F.2d 44, 46 (8th Cir.1976) (citation omitted). " 'A directed verdict is in order only where the evidence points all one way and is susceptible of no reasonable inferences sustaining the position of the non-moving party.' " Id. (citations omitted). " 'In making this determination, the evidence together with all reasonable inferences to be drawn therefrom, must be viewed in the light most favorable to the non-moving party.' " Id. (citations omitted).
 
 
 51
 We hold that the district court did not err in denying the motion for directed verdict or JNOV. Reasonable persons could arrive at different conclusions in this case.
 
 
 52
 Accordingly, the judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas, sitting by special designation
 
 
 [1]
 Appellants' action in state court against the five members of the city council individually sought a declaratory judgment that the C-2 zoning of the West Park Mall was invalid
 In July 1979, following the zoning of the West Park Mall to C-4, appellants filed their first amended complaint. The City of Cape Girardeau and a recently elected council member were added as defendants. Appellants sought an injunction against the existing West Park Mall rezonings, a permanent injunction against future rezoning, and $2.5 million for damage to their "reputation and credibility" resulting from the city manager's statements about the zoning of the Westborough Mall.
 In March 1979 a second amended complaint was filed in state court. George Staples, Jr., and Westborough Mall Associates were added as plaintiffs and Drury Industries, Inc., May Centers, Inc., May Centers of Cape, Inc., W.G. Lawley and Charles L. Drury were added as defendants. The second amended complaint specifically pleaded the automatic reverter exemption and asked for a determination of the Westborough Mall C-4 status, a declaration that the West Park Mall rezonings were invalid, a prohibition against further West Park development, relief under 42 U.S.C. Sec. 1983, $20 million actual damages, and $5 million punitive damages.
 
 
 [2]
 W.G. Lawley, city manager of the City of Cape Girardeau, testified he was the chief executive officer for the City and was responsible for the administration of city government and the enforcement of city ordinances. He also testified that he supervised the City Engineering Department, which was responsible for issuing building permits
 
 
 [3]
 The City's master zoning map was a part of the zoning ordinance and is the official record of the zoning districts as established by City ordinance. The map is maintained during the life of the ordinance
 
 
 [4]
 Count IV was an antitrust conspiracy claim against all the defendants. Count V was a conspiracy claim for malicious interference with appellants' business. Count VI was a monopoly conspiracy claim. Count VII sought a declaratory judgment that the West Park Mall rezonings were invalid
 
 
 [5]
 Plaintiff's proposed instruction No. 7 read as follows:
 The Defendant, City of Cape Girardeau, should be found liable only if the City itself, by an official policy or custom, caused a violation of the Plaintiffs' constitutional rights. The City is not responsible merely because of an isolated incident where one of its employees acted. However, the City will be liable for the actions of the City Council or of other highranking officials who had final authority to act and whose actions may fairly be said to represent official policy.
 It is not required that a policy be officially adopted by the City's lawmakers to create liability, although a resolution or ordinance is clearly the official policy of the City. If the action of a public official has the force of law, the City itself will be liable for acts of individual officers and employees committed pursuant to that action.
 It is not required that there be an ongoing pattern of events to establish liability against the City. If a single event takes place pursuant to a general policy, or itself establishes policy, the City may be liable for that action. Moreover, you are instructed that the Defendant City's continuing failure to remedy or undue delay in stopping known unconstitutional conduct of its public officials is a type of informal policy or custom that gives rise to official policy.
 You are specifically instructed that a person's action or conduct depriving Plaintiffs of a Constitutional right may fairly be said to represent official policy. In other words, because such action or conduct may be unlawful does not prevent official policy from being represented.
 The City Manager is one City official whose actions represent municipal policy, especially if he joined with other high-ranking municipal officers in invoking municipal authority against the Plaintiffs.
 
 
 [6]
 Instruction No. 21 read as follows:
 In considering whether plaintiffs have been deprived of any federally protected constitutional right, you must consider whether they had adequate "post-deprivation" state law remedies. By this I mean, even if you find that the purported "reverter" took place and was the result of an unlawful conspiracy between the City of Cape Girardeau and the West Park defendants, you must further consider whether this resulted in a civil rights claim. In this regard, you should consider the fact that plaintiffs could have petitioned a court of the State of Missouri for preliminary injunction requesting that the alleged reverter be corrected. You should further consider the fact that plaintiffs could have sought to have the purported reverter corrected by the City of Cape Girardeau, by talking to the City Manager or the City Council. You must determine whether these various alternatives provided adequate methods of correcting the "reverter" under state law.
 
 
 [7]
 We note that the instruction offered by appellants is based substantially on this court's decision in Westborough I. This instruction, although not designated as a definition of official policy, is a substantially accurate definition of official policy. The district court, however, could have properly found the last two paragraphs of the instruction to be inaccurate in part. In the present case, where an instruction on official policy is essential to the jury's understanding of the case, the district court may not omit the instruction if the tendered instruction is not entirely correct. The court has the "duty to give the substance of the requested instruction where it appears that the instruction on the issue is [necessary] to enable the jury to determine intelligently the question." Brandes v. Burbank, 613 F.2d 658, 668 (7th Cir.1980)