710 F.Supp. 1278 (1989)
WESTBOROUGH MALL, INC., et al., Plaintiffs,
v.
CITY OF CAPE GIRARDEAU, MISSOURI, Defendant.
No. S 80-0105 C.
United States District Court, E.D. Missouri, Southeastern Division.
April 20, 1989.
*1279 Andrew S. Lipton, Timothy M. Burke, Manley, Jordan & Fischer, Cincinnati, Ohio, for plaintiffs.
Stephen E. Strom, Craig M. Billmeyer, Finch, Bradshaw, Strom & Steele, Cape Girardeau, Mo., for defendant.

MEMORANDUM OPINION
GUNN, District Judge.
Westborough Mall, Inc., a corporation, George Staples, Jr., and Westborough Mall Associates, a Missouri limited partnership, bring this civil rights action pursuant to 42 U.S.C. § 1983 against the City of Cape Girardeau (City) alleging a deprivation of their procedural due process rights under the fourteenth amendment and a conspiracy between the City and certain private parties.[1]
This case has had a long history. In Westborough Mall, Inc. v. City of Cape Girardeau, 693 F.2d 733 (8th Cir.1982), cert. denied, 461 U.S. 945, 103 S.Ct. 2122, 77 L.Ed.2d 1303 (1983) (Westborough I) the Eighth Circuit Court of Appeals reversed and remanded for trial a summary judgment entered on behalf of defendants. On remand plaintiffs voluntarily dismissed three counts of their original complaint and the jury returned a verdict in favor of defendants on the three remaining counts. Thereafter, the Eighth Circuit reversed the jury verdict for defendants holding that the jury instructions were prejudicially erroneous. Westborough Mall, Inc. v. City of Cape Girardeau, 794 F.2d 330 (8th Cir. 1986), reh'g denied, 804 F.2d 108 (1986), cert. denied, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 688 (1987) (Westborough II).
In this, the most recent phase of the litigation, plaintiffs' remaining claims under 42 U.S.C. § 1983 were tried by consent of the parties to the Court sitting without a jury. Plaintiffs assert that the City acting by and through the city manager and city council deliberately abused its authority by improperly applying an automatic reverter provision of the City zoning code to plaintiffs' land. Defendant contends that the alleged reversion of plaintiffs' zoning was the result of a negligent oversight by the city manager which the city council neither authorized nor ratified. The Court, having considered the pleadings, the evidence and testimony adduced at trial, the briefs of the *1280 parties and the applicable law, now enters judgment in favor of defendant and makes the following findings of fact and conclusions of law in accordance with Rule 52, Fed.R.Civ.Pro.

Findings of Fact
With the additions noted below, the Court finds that the facts are as stated in the published opinion of the Eighth Circuit in Westborough II. See Westborough Mall, Inc. v. City of Cape Girardeau, 794 F.2d 330, 333-35 (8th Cir.1986), reh'g denied, 804 F.2d 108 (1986), cert. denied, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 688 (1987).
In 1973 plaintiff Westborough Mall, Inc. began work on a regional shopping facility to be known as Westborough Mall by obtaining an option to lease approximately 67.5 acres of land in Cape Girardeau, Missouri. Concurrently, Charles L. Drury expressed interest in developing a shopping center in Cape Girardeau to be called West Park Mall. The proposed site for West Park Mall was less than one mile from the Westborough site.
On June 5, 1974 the Cape Girardeau City Council enacted Ordinance No. 904 which assigned a regional shopping center zoning classification of C-4 to the Westborough Mall property. Ordinance No. 904 also exempted the property from the provisions of another city ordinance, Ch. 30 § 31(e). Ch. 30 § 31(e), referred to as the automatic reverter provision, provides for the automatic reversion of a C-4 zoning designation to its prior status if a shopping center is not constructed on the site within three years. The C-4 zoning designation, which is specifically designed for shopping centers, requires the developer to formulate comprehensive, coordinated building plans and layouts.
In September of 1976 plaintiff George Staples formed Westborough Mall Associates, a limited partnership, to develop the Westborough Mall site. Westborough Mall, Inc. then executed a subordinated ground lease on the site and subleased the property to Westborough Mall Associates.
In June of 1977 the City by ordinance corrected certain legal descriptions of the Westborough site and confirmed that the property was zoned C-4. The City also issued a building permit to Westborough Mall Associates. This permit required construction to begin within six months and be completed within two years. Thereafter, the partnership expended approximately $800,000 to conduct a survey, grade the site, and install an underground drainage system, entrances, a swale and a berm.
On March 18, 1979 the development of West Park Mall as a regional shopping center was publicly announced. The Drury and May companies, the developers of the West Park Mall, were well-financed, highly experienced, and had obtained commitments from two nationally known anchor stores. By contrast, after five years of effort, the Westborough Mall developers had no anchor tenants, cash, commitments for temporary or permanent financing, or architectural and building plans.
On April 4, 1979 the City granted the developers of West Park Mall a zone change to C-2, and permitted them to begin construction of their project in a C-2 zone with the understanding that they would later apply for a C-4 designation. Although the C-2 zoning designation is more restrictive than the C-4 designation with respect to building size and location, it does not require developers to obtain either a building plan approval or a plot layout.
On April 5, 1979 Staples filed suit in state court challenging the rezoning of the West Park Mall site. A few days after the suit was filed in April 1979, the city manager, W.G. Lawley, received an inquiry from another city employee concerning the status of plaintiffs' building permit. In response to that inquiry, Lawley reviewed the City's zoning ordinances and erroneously concluded that the Westborough Mall C-4 zoning had reverted to a non-shopping center designation because five years had passed since the site had been zoned C-4 and no construction had begun. The city manager overlooked the fact that Ordinance No. 904 expressly exempted the site *1281 from the operation of the automatic reverter provision, Ch. 30 § 31(e).
On April 6, 1979 the local media reported the city manager's opinion that plaintiffs' C-4 zoning had reverted. Thereafter, the city manager conferred with the city attorney and on April 11, 1979 prepared a memorandum to the city engineer ordering him to change the City's master zoning map to show a reversion of the Westborough site from C-4 to the original zoning. The master zoning map was changed as ordered by the city manager. In addition, the city manager directed the city engineer not to issue or renew building permits for the construction of plaintiffs' mall. No requests for building permits were received.
In accordance with his mistaken opinion, the city manager notified the city council in a memorandum that "until instructed otherwise by the City Council or a Court of proper jurisdiction" he intended to apply the automatic reverter provision of the city zoning code to the Westborough Mall property. This memorandum was given to each city council member and discussed at the city council's April 17, 1979 meeting. The city council took no action on the matter.
On May 3, 1979 Carl Penzel, plaintiffs' grading contractor and a limited partner in Westborough Mall Associates, filed a $312,000 mechanic's lien against the Westborough tract. On May 23, 1979 Penzel filed suit on his mechanic's lien and to collect a $5,000 penalty owed him under his construction contract with plaintiffs due to their failure to begin construction by May 1, 1979.
In July 1979 Charles Green, the plaintiffs' financing representative, inquired of the city manager concerning the zoning designation of the Westborough tract. The city manager replied that in his opinion the Westborough site no longer carried a C-4 zoning. He further stated that Green might want to have his legal staff review the ordinance to satisfy himself of the validity of the city manager's opinion. The city manager provided Green with a copy of the city's zoning code.
Green subsequently informed plaintiffs of his decision to cease his efforts to obtain development loans for their project. The city manager's opinion concerning the status of plaintiffs' zoning did not materially influence Green's decision. He had long been unable to proceed with plaintiffs' construction financing because of their failure to provide him with anchor tenant leases, proposed lease forms, financial information and a cash deposit.
On August 1, 1979 the West Park Mall developers obtained a rezoning of their property from C-2 to C-4. The development of the project proceeded thereafter and the West Park Mall opened in 1981.
In August 1979 plaintiffs filed their first amended complaint in the state court action. Although plaintiffs realleged their challenge to the zoning of the West Park Mall site and asserted that statements to the effect that plaintiffs no longer had C-4 zoning were "totally untrue," they sought no remedy concerning the zoning of their own land.
The City learned of the city manager's oversight in March 1980 when plaintiffs filed their second amended complaint in the state court action and pled the existence of their exemption from the automatic reverter provision.
In September 1980 the city council passed Ordinance No. 1599 reaffirming that the Westborough Mall tract was specifically exempted from the application of the automatic reverter provision and that the tract was zoned C-4.

Conclusions of Law
The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. The law of this case as stated in Westborough I and Westborough II is subject to the findings of fact by this Court on the evidence presented on this retrial.
The central and dispositive issue before the Court is to determine whether the actions of which plaintiffs complain amount to official municipal policy so as to subject the City to liability under § 1983. The City cannot be held liable under § 1983 unless plaintiffs demonstrate a "direct causal link" between a municipal policy or custom *1282 and the alleged procedural due process violation. City of Canton v. Harris, ___ U.S. ___, ___, 109 S.Ct. 1197, 1206, 103 L.Ed. 2d 412 (1989); see City of St. Louis v. Praprotnik, 485 U.S. 112, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988). Respondeat superior liability does not attach under § 1983, but municipal officials who have "final policymaking authority" may by their actions subject municipalities to § 1983 liability. Pembaur v. Cincinnati, 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986). Whether an official possesses "final policymaking authority" is a question of state law. Id. Policymaking authority may be "granted directly by legislative enactment" or "delegated by an official who possesses such authority." Id.
Plaintiffs contend that the city manager possessed "final policymaking authority" or that the city council, by failing to act, ratified the city manager's actions pursuant to the automatic reverter provision and adopted the reverter of plaintiffs' zoning as the official policy of the City. Defendant asserts that the city council neither authorized nor ratified the city manager's actions.
The Court concludes that the actions taken by the city manager with regard to plaintiff's zoning do not constitute the official policy of the City. The city council possesses final policymaking authority with respect to zoning by virtue of its authority under state law to enact ordinances adopting and approving zoning designations. Mo.Ann.Stat. § 89.020 (Vernon 1989); McCarty v. City of Kansas City, 671 S.W.2d 790 (Mo.Ct.App.1984). (Zoning is a legislative function exercised exclusively through the enactment of ordinances.) The city council enacted Ordinance No. 904 establishing plaintiffs' C-4 zoning exempt from the automatic reverter provision and Ordinance No. 1599 reaffirming that plaintiffs' site was zoned C-4, but there is no "direct causal link" between the passage of these ordinances and plaintiffs' alleged injury. City of St. Louis v. Praprotnik, 108 S.Ct. at 926.
The Court further concludes that the city council did not authorize or ratify the city manager's decision with respect to the reversion so as to make it the official policy of the City. Although the city manager apprised the city council of his intention to apply the reverter provision to plaintiffs' site, the city council never formally approved that decision or the basis for it. See City of St. Louis v. Praprotnik, 108 S.Ct. at 926 ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification [is] chargeable to the municipality.")
In addition, the Court concludes that the city council did not delegate its official policymaking authority to the city manager. Acquiescence in the discretionary decisions of subordinates is not delegation to them of the authority to make policy. City of St. Louis v. Praprotnik, 108 S.Ct. at 927. Similarly, the failure to investigate the basis of a subordinate's decision is not equivalent to the delegation of policymaking authority. Id. Moreover, a decision taken by a subordinate does not become chargeable to the municipality as policy unless the authorized policymaker approves that decision and the basis for it. Id. at 926; see also id. at 927 (suggesting that "express approval" may be necessary).
Although the unauthorized acts of the city manager had the "potential to become official policies" or may have been "perceived" as such, § 1983 liability does not attach to injuries inflicted solely by employees or agents. See City of St. Louis v. Praprotnik, 108 S.Ct. at 925 n. 2. The City has done no more than employ an individual who in the exercise of his discretion reached an erroneous decision. Id. at 925; see also Landrigan v. City of Warwick, 628 F.2d 736, 747 n. 7 (1st Cir.1980).
Plaintiffs also allege that the City conspired with the developers of the West Park Mall to cause the reversion of plaintiffs' C-4 designation and to deprive them of their rights to procedural due process. Plaintiffs have offered no credible evidence of the existence of a conspiracy between the City and those developers.
Having found against plaintiffs on the critical issue concerning the city manager's *1283 action regarding reverter, the Court need not address other issues raised.
Judgment for defendant.

ORDER OF JUDGMENT
Pursuant to the memorandum opinion filed herein on this date,
IT IS HEREBY ORDERED, ADJUDGED and DECREED that judgment be and it is entered in favor of defendant and that defendant shall recover of the plaintiffs its costs of action.
NOTES
[1] On March 30, 1988 the parties stipulated, pursuant to Fed.R.Civ.P. 41(a)(1)(i), to the voluntary dismissal with prejudice of the following defendants: Charles L. Drury, Drury Industries, Inc., The May Department Stores Co., May Centers, Inc. (f/k/a May Stores Shopping Centers, Inc.), West Park Associates and May Centers of Cape, Inc.