**WESTBOROUGH MALL, INC., et al., Plaintiffs,**

v.

**CITY OF CAPE GIRARDEAU, MISSOURI, Defendant.**

No. S 80–0105 C.

United States District Court, E.D. Missouri, Southeastern Division.

Feb. 11, 1991.

---

James R. Robison, Sikeston, Mo., Timothy M. Burke, Robert E. Manley, Andrew S. Lipton, Manley, Burke & Fischer, Cincinnati, Ohio, Robert H. Freilich, Martin L. Leitner, Freilich, Leitner, Carlisle & Shortlidge, Kansas City, Mo., for plaintiffs.

Craig M. Billmeyer, Stephen E. Strom, Finch, Bradshaw, Strom & Steele, Cape Girardeau, Mo., Bradshaw Smith, Van Buren, Mo., Warren L. Wells, City Atty., Cape Girardeau, Mo., for defendant.

## MEMORANDUM OPINION

GUNN, District Judge.

This matter is before the Court on remand from the United States Court of Appeals for the Eighth Circuit for the purpose of determining "whether and to what extent Westborough suffered damages as a result of the city manager's actions." *Westborough Mall, Inc. v. City of Cape Girardeau,* 901 F.2d 1479, 1481 (8th Cir. 1990). The Court of Appeals remanded this matter for the limited purpose mentioned, retained jurisdiction and reserved judgment on this Court's liability determi-

nation. On remand, this Court proposed to make its determinations on the basis of the substantial record as to damages adduced in the prior proceedings. At the Court's invitation the parties submitted proposed findings of fact and conclusions of law relative to the issue of damages.

Plaintiffs' proposed findings of fact and conclusions of law adopted, reasserted and incorporated by reference their previously filed proposed findings and conclusions. They also filed a reply to defendant's submission. The Court, having thoroughly considered these filings, the transcript of the trial and the documentary evidence adduced at trial, makes the following findings of fact and conclusions of law.

### Findings of Fact

1. At trial plaintiffs introduced testimonial and documentary evidence in support of their damage claim. Mr. R. Jack Huntstein and William P. Dockins testified as expert witnesses in the field of real estate appraisal. Mr. Louie King testified as an accounting expert and John F. Burke, Jr. testified as an expert economist. Defendant also introduced testimonial and documentary evidence to rebut plaintiffs' claim.

2. The Court finds that Cape Girardeau could support only one regional mall in 1979.

3. In early 1979, after five years of effort to develop a regional shopping mall, plaintiffs had no anchor tenants, no cash, no commitments for financing, no architectural or building plans and no confirmed affiliation with any recognized regional mall development organization. Plaintiffs also had outstanding debts in the amount of $612,000.00.

4. The C–4 zoning designation of the plaintiffs' land authorized construction of only the specific tract layout and building plans which plaintiffs had proposed.

5. On March 18, 1979, the May/Drury developers announced their plans to develop a regional shopping mall in the Cape Girardeau area, to be known as the West Park Mall. May/Drury proposed to bring two well known anchor stores, Famous

Barr and J.C. Penney, into the project and had tentative commitments from each of these stores. Unlike plaintiffs, May and Drury were well financed, experienced developers with recognized reputations in the field.

6. On March 21, 1979, the City approved May/Drury's zoning application for a C–2 zoning designation of the West Park Mall site to permit the development of a regional shopping mall to become effective on April 4, 1979.

7. On April 5, 1979, plaintiffs filed suit in state court alleging that the May/Drury zoning "substantially and permanently damaged plaintiffs' property and the uses for which it had been zoned."

8. On April 6, 1979, the City Manager publicly announced that he believed that plaintiffs' C–4 zoning designation had reverted to the prior classification. When the City Manager announced the reversion of plaintiffs' C–4 zoning designation, plaintiffs knew of the reverter exemption. Plaintiffs advised the press that the property still retained a C–4 zoning designation and assured their partners that they need not worry about the reverter announcement.

9. Apart from the institution of lawsuits, plaintiffs took no steps to notify the City or the City Manager that they still held their C–4 zoning due to the exemption.

10. Expert witnesses Huntstein and Dockins testified that "for all practical purposes ... the C–4 zoning was no longer in effect and had reverted [as of the April 6 announcement] creating a cloud that precluded development and impaired marketability of the property." (Tr. 11–232–243, 246–258, 236–237, 249, 12–75–76, 97–94). Huntstein testified that, in his opinion, the loss in value to plaintiffs' leasehold interest in the property as a result of the City Manager's announcement was $2,487,-000.00, taking into account the full $760,-000 present value of all the lease payments. (Tr. 12–106–107). Dockins testified in his capacity as an expert appraiser that the loss in the value of the leasehold interest between the date of the May/Drury announcement and immediately after the City

Manager's announcement was $2,050,-000.00. Huntstein and Dockins both testified that the loss in value to plaintiffs' leasehold interest did not depend on plaintiffs' ability to construct a regional shopping mall on the site and was solely related to the value of the site before and after the loss of zoning. (Tr. 12–120).

Each of the expert appraisers arrived at his estimate of damage to plaintiffs' leasehold interest by valuing plaintiffs' interest in the land immediately before and immediately after the City Manager's announcement and then deducting the annual rents owed by plaintiffs to the holders of the fee. Neither appraiser included in his calculation a deduction for the increased rents plaintiffs would have been obligated to pay to the fee owners based upon sales in the mall. (Tr. 12–112, 113, 139).

For this reason the Court finds that the testimony of plaintiffs' expert appraisers, although uncontroverted, is without probative value. The valuation process used by each of plaintiffs' experts was flawed by their failure to take into account plaintiffs' obligation to pay an increased rent based upon the level of sales in the completed mall. The experts' opinions as to the decrease in value to plaintiffs' leasehold interest are therefore erroneous and the Court finds that plaintiffs have failed to establish their claim of injury to their leasehold interest in the property as a result of the reverter announcement.

11. On September 17, 1980, the City Council passed Ordinance No. 1599 reaffirming that the Westborough Mall tract was specifically exempted from the application of the automatic reverter provision and that the tract was zoned C–4. Plaintiffs contend that this action on the part of the City did not remedy the injury to their interest in the site because they already had lost their window of opportunity to develop the mall project. The Court finds that the reverter publicity affected the tract, if at all, only from April 6, 1979 through September 17, 1980. The Court further finds that plaintiffs failed to offer any credible evidence that the announcement of the reversion of plaintiffs' C–4

zoning had any adverse impact on the value of plaintiffs' interest in the site.

12. The Court finds that plaintiffs failed to offer any credible evidence that the City Manager's opinion concerning the status of plaintiffs' zoning caused anyone to take actions adverse to the preservation of plaintiffs' interest in the site. Plaintiffs offered evidence that as a result of the reverter announcement that their financier, Charles Green, decided to cease his efforts to obtain development loans for the project. This Court previously found that "[t]he city manager's opinion concerning the status of plaintiff's zoning did not materially influence Green's decision." *Westborough Mall v. City of Cape Girardeau*, 710 F.Supp. 1278, 1281 (E.D.Mo.1989).

13. Plaintiffs also seek to recover damages for the lost investment opportunity resulting from their inability to sell their leasehold interest in the property. Plaintiffs offered testimony that they were unable to sell the property until April of 1987 because of the announced reverter. Plaintiffs contend that if they had been able to sell the property they could have invested the proceeds of the sale and reaped a greater return on their investment. Plaintiffs' expert economist calculated the loss of return rate to be $1,054,207.00. The Court finds that plaintiffs' claim of damages resulting from lost investment opportunity is highly speculative and lacks a credible factual basis. There was no credible evidence that plaintiffs reasonably could have anticipated any particular rate of investment return from this project. In addition, plaintiffs' claim for lost rate of return is predicated on the questionable assumption that they are entitled to recover a fourteen per cent per annum rate of return every year for a period of eight years despite their involvement in a highly speculative mall development project. The Court accepts plaintiffs' assertion that their claim for damages does "not depend upon [their] ability to develop a regional shopping mall." However, the Court cannot disregard the degree of risk involved in the original investment when assessing plaintiffs' entitlement to remuneration for lost rate of return. Moreover, the Court notes

that although the reverter ended on September 17, 1980 when the City Council reaffirmed the C-4 zoning designation, plaintiffs failed to sell the property until 1987. There was no credible evidence to support plaintiffs' contention that the loss of investment return they allegedly suffered during those seven years was attributable to the reverter.

14. Pursuant to the parties' stipulation, the Court finds that plaintiffs received $10,000.00 in a pre-trial settlement with the following defendants: Charles L. Drury, Drury Industries, Inc., The May Department Stores Co., May Centers, Inc., West Park Associates and May Centers of Cape, Inc.

15. If the City were to be held liable for the actions of the City Manager with respect to plaintiffs' C-4 zoning designation, the Court finds that plaintiffs suffered no actual injury as a result of those actions.

## Conclusions of Law

1. The Court concludes that the proper mode of calculating the decrease in value to plaintiffs' leasehold interest in the mall is as follows:

> The measure of damages is the difference between the value of the use and occupancy of the leasehold for the remainder of the term, plus the value of the right to renew in the lease ..., *less the agreed rent which the tenant would pay for such use and occupancy.*

*United States v. Petty Motor Co.*, 327 U.S. 372, 381, 66 S.Ct. 596, 601, 90 L.Ed. 729 (1945), *quoted in Frontier Airlines, Inc. v. State Tax Commission*, 528 S.W.2d 943, 947 (Mo.1975) (en banc) (emphasis supplied).

Although plaintiffs apparently concede that this is the proper measure of damages, their expert appraisers failed to properly apply this formula by failing to deduct certain rents based upon sales in the mall which plaintiffs would have been obligated to pay to the owners of the fee. For this reason, the Court concludes that plaintiffs' expert appraisers failed to properly apply the legal standard for calculation of the

loss in value to plaintiffs' leasehold interest in the site.

2. Plaintiffs failed to establish by a preponderance of the credible evidence that any loss in the value of their leasehold interest was attributable to the City Manager's announcement concerning the reversion of plaintiffs' C-4 zoning designation.

3. Plaintiffs failed to establish by a preponderance of the credible evidence that any individual was induced to take adverse action respecting their leasehold interest as a result of the City Manager's announcement.

4. Plaintiffs failed to establish by a preponderance of the credible evidence their entitlement to damages for lost investment opportunity.

5. Inasmuch as plaintiffs have failed to sustain their burden of proof as to compensatory damages, they are not entitled to an award of prejudgment interest.

6. Inasmuch as plaintiffs have failed to sustain their burden of proof as to compensatory damages, the Court finds it unnecessary to address the effect of the pre-trial settlement on the damage award.

Pursuant to the direction of the United States Court of Appeals for the Eighth Circuit, the Court herewith enters its findings and conclusions on the issue of "whether and to what extent Westborough suffered damages as a result of the City manager's actions." *Westborough Mall, Inc. v. City of Cape Girardeau*, 901 F.2d at 1481.